LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty on a trial under an indictment that charged in pertinent part:
“... Bryan Kelly Broadus ... feloni-ously took approximately twelve dollars in lawful currency ... the property of Mary Lakos, from her person, and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same.... ”
*174 Mrs. Mary T. Lakos testified as a witness for the State that in September 1979, while she was visiting her sick brother on West Street in Mobile County and while she and her brother were returning to his home from a walk, she found a “young man” who was identified by her as the defendant standing in the kitchen with a knife in his hand. Her testimony was in part as follows:
“... this young man was standing there and he comes to me like this (indicating) with the knife.
“Q. All right. You are saying comes to you like this with a — what kind of knife? “A. A very sharp knife, ‘cause he just touched me and it cut me.
“Q. Was it one of your knives or what? “A. What?
“Q, What kind of knife was it, do you know?
“A. Well, it was kind of — I don’t — it was kind of — not long. It was kind of like this size (indicating), you know.
“Q. All right. Are we talking about a dinner table knife or a butcher knife or— “A. No, sir, no.
“Q. What kind of knife was it?
“A. It wasn’t a table knife, no, and— “Q. Okay. Was it a sharp knife?
“A. Very sharp. I don’t know what it was, but he—
“Q. Without saying anything at all he just walked up to you and cut you with a knife?
“A. That’s right, wanted to scare my brother evidently to give him, you know —well, anyway, I said, Son, I said, What is wrong? Are you in trouble? “What is it you want? He said, Money, money, and my brother said, I’ll go get it, and he couldn’t hardly walk, and this one puts the knife right in my brother’s side right here (indicating) and he said, I’ll go with you, and I said, Manuel, take out your wallet and give him what you have, and he took his wallet out. I think he had three twenties and he—
“Q. Okay.
“A. And he took the money and then I said — he—but at that time I called the Lord when I saw him cut me and he — it seems like he understood. I don’t know, but this metamorphosis came over him and he grabbed some paper and wet it, you know, a roll of paper, kitchen paper, and wet it and put it on my arm to stop the blood.
“Q. Who did this?
“A. The young man, he said, I’m sorry. “Q. And what happened after that?
“A. And then — then he said, You know — Then I asked him and then he said he wanted money and I told my brother, and then he went toward the dining room, was straight, and he picked up my purse. I said, take everything that’s in my wallet. He said I’ll take everything but your driver’s license, and he said— “Q. Did you have any money in your wallet?
“Á. —He didn’t want that. He took the money out of my pocket book which was around $12.00 to $13.00 in change and all. “Q. What happened after that?
“A. Then he put the knife on us and he says — Took us to the living room — sit there, about at the sofa, and don’t move, and my brother started to get up and he put the knife right here (indicating) to my brother.

“Q. Did he [the robber] run when you told him he’d better run?
“A. Yes, he — he left.
“Q. He took off? Was it still daylight outside?
“A. Yes, he took off. The neighbor next door saw him. What?

There was testimony on behalf of witnesses for defendant to the effect that he was elsewhere than at the scene of the robbery at the time it occurred.
The essential issue between the parties on the trial was as to the question of the identity of defendant as the one who committed the robbery, particularly the robbery of Mrs. Lakos.
*175 No issue is presented by appellant as to the sufficiency of the evidence to support the conviction, and we are convinced that no reasonable contention can be made that the evidence was insufficient.
In the first issue presented by appellant he contends that there was error “to allow a police officer to testify as to the ownership of an automobile.” The contention of appellant as to the issue is directed to that part of the direct examination of Officer Gene Ganoe, one of the police officers who was called to the scene of the robbery soon after it occurred:
“Q. What car are you talking about?
“A. The car that was left in the street abandoned. It had run out of gas.
“Q. On West Street?
“A. West Street, right.
“Q. Where on West Street was it?
“A. About 60 feet from the intersection. I believe the other street is Lamar. Right in front of the deadend in front of the victim’s house.
“Q. All right, and did you have an occasion to determine who owned that automobile?
“A. Yes, I did.
“Q. You did that yourself?
“A. Yes, sir.
“Q. All right. Who owned that automobile?
“MR. GIBBONS [Defendant’s attorney]: I object to it, calls for hearsay.
“THE COURT: Overruled.
“Q. Who owns that automobile?
“A. Bryan Broadus owned it. It was registered to his dad, but Bryan Broadus was the—
“MR. GIBBONS: I’m going to object, now, Judge. He said it’s registered in his dad’s name. That’s the answer. I move to exclude anything else.
“THE COURT: Wasn’t anything else, but if it was, it’s excluded.
“MR. HARRISON [State’s attorney]: Pardon.
“THE COURT: I said there wasn’t anything else, but if there is, exclude it.”
In his brief on appeal, appellant states that the issue as to who owned the automobile “was a legal conclusion given by Sgt. Ganoe in violation of Rules of Evidence.” Even so, it is to be noted that no such ground of objection was included in any objection or motion interposed by defendant as to the testimony. The only ground of objection to the question as to who owned the automobile was that it “calls for hearsay.” There seems to be some basis for a misunderstanding as to what defendant moved to exclude in connection with the matter and as to what the court excluded. At any rate, we find that there was no error prejudicial to defendant in the quoted rulings of the court, for the reason that it is clear from the transcript of the evidence as a whole that the particular automobile that was near the scene of the robbery soon after the robbery occurred was an automobile that either belonged to the defendant or to defendant’s father, and, according to the testimony, of the defendant he “had loaned it to” two other people, naming them, that day.
Appellant’s second contention for reversal is directed to a ruling of the court during the direct examination of Officer John Pappas, a witness for the State on rebuttal after the defendant had testified in the case. It was during the part of the testimony of Officer Pappas as to a conversation he had with Randall Parker, one of the persons who, according to the defendant’s testimony, had borrowed the particular automobile on the day of the robbery. The transcript shows:
“Q. All right, at that time did Mr. Parker indicate — make any indication to you at all as to who was present or was not present?
“MR. GIBBONS: Objection.
“THE COURT: Overruled. Go ahead. “A. Yes, sir.
“Q. All right, tell the ladies and gentlemen of the jury now, we’re just referring to who is present and who is not present. Tell the ladies and gentlemen of the grand [sic] jury what Mr. Parker said about that.
*176 “A. Mr. Parker made a statement that he and—
“MR. GIBBONS: I’m going to object to this, Judge.
“THE COURT: Overruled.
“MR. HARRISON: We laid a predicate.
“THE COURT: Overruled. Go ahead.
“A. Mr. Parker made the statement that he and his friend, Bryan Broadus and Ran — Ralph Hayes were out riding around together in their — in Bryan’s automobile and that they had run out of gas and that Bryan went to get some gas and then he said, Oh, no, that must not have been the day of the robbery, it was another day.
“Q. Took it right back?
“A. Yes, sir.”
The testimony just quoted was given after Randall Parker had testified as a witness for the State to the effect that he and Ralph Hayes had borrowed the automobile from the defendant on the day of the robbery, that defendant was not with them at the time and that in driving the automobile it had run out of gas at the house of the robbery. On cross-examination, the witness testified:
“Q. Have you ever told anyone else that the Defendant was with you that day? “A.. No, sir.
“Q. With you and Ralph?
“A. No, sir.
“Q. Never said that at all?
“A. No, sir.
“Q. You’ve never changed your mind?
“A. Never changed my mind.”
Appellant contends that no proper predicate was laid to impeach witness Parker in his testimony to the effect that defendant was not present with Parker and Hayes on the occasion when the automobile ran out of gas close to the scene of the robbery. However, it is to be noted that such was not a specific ground of objection by defendant to the question asked the witness Parker. It is true that the question asked the witness Parker on cross-examination by the State is not in the exact words of the predicate that the State asserted had been laid, but the predicate is no more vague than was the objection proposed by defendant. The question was substantially in the language of the predicate made, and, in the absence of a specific ground of objection on the point, we find that the ruling of the court did not constitute prejudicial error.
Appellant’s only other contention for a reversal is to the effect that the court should have declared a mistrial after discovering that the investigating officer, Sgt. Gene Ganoe, talked with one of the jurors prior to submission of the case to the jury for its consideration. This matter was brought to the attention of the court out of the presence of the jury, as shown by the following part of the transcript:
“THE COURT: All right, Sgt. Ganoe, for the record, you’re still under oath. Mr. Gibbons has been advised, apparently by his client or somebody that knows his client, that you have been in the hall talking to jurors. Very simply and for the.record, have you been talking to the jurors in the hall?
“SGT. GANOE: I talked to one juror.
“THE COURT: About what?
“SGT. GANOE: Officer got shot last night and police in general.
“THE COURT: Did you start the conversation or the juror start the conversation?
“SGT. GANOE: He did.
“THE COURT: Nothing said anything about this case or—
“SGT. GANOE: No, sir.
“THE COURT: Huh?
“SGT. GANOE: No, sir.
“THE COURT: All right, then, bring them in.”
No motion for a mistrial was interposed by the defendant, and no other ruling on the matter was invoked by defendant. Notwithstanding the advisability and propriety of witnesses doing what they can within reason to avoid conversation with jurors, there is nothing whatever in the incident involved to indicate the conversation that ensued between the witness and the particular juror could have resulted in any injury to defendant. No prejudicial error can be *177 found in the failure of the court to declare a mistrial ex mero motu.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.